UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN ELLISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16 C 7428 |
| | ) | |
| GENERAL IRON INDUSTRIES, INC. | ) | |
| and JOHN W. FRANO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendant General Iron Industries, Inc.'s ("General Iron") motion to dismiss Plaintiff Ryan Ellison's ("Ellison") Complaint (the "Complaint"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the Court grants General Iron's motion as to Count I, and denies the motion for Counts II–IX.

## BACKGROUND

For purposes of the instant motion, the following well-pleaded allegations derived from the Complaint are accepted as true. *Ed Miniat. Inc. v. Global Life Ins. Grp., Inc.*, 805 F.2d 732, 733 (7th Cir. 1986); *Dilallo v. Miller & Steeno, P.C., et al.*, No. 16 C 51, 2016 WL 4530319, at *1 (N.D. Ill. Aug. 30, 2016). This principle, however, does not apply to legal conclusions; the Court will not consider conclusory

claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all reasonable inferences in Ellison's favor and construes all allegations in the light most favorable to him. *Ed Miniat. Inc.*, 805 F.2d at 733; *Dilallo*, 2016 WL 4530319, at *1. On June 7, 2016, Ellison filed the Complaint in the Circuit Court of Cook County. Thereafter, on July 21, 2016, General Iron, with co-Defendant John W. Frano's ("Frano") consent, removed the action from the Cook County Circuit Court to the United States District Court for the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

According to the Complaint, Frano works as a police officer for the Chicago Police Department ("CPD"). Ellison alleges that Frano also works as a security officer for General Iron, and at all times relevant to the Complaint, General Iron employed him as a security officer. At all relevant times, Ellison claims that Frano was simultaneously "acting in the course and scope of his employment" with General Iron and under color of state ordinance, regulation, or law.

On June 7, 2014, while Ellison and his friend were exploring Chicago on their bikes, Ellison asserts that he paused to take a photograph with a structure near a scrap yard belonging to General Iron at 1909 North Clifton Avenue. At that moment, Ellison contends that Frano drove up to him in a pick-up truck, swearing and yelling at him to leave. Ellison claims that Frano did not reveal to Ellison that he is a Chicago police officer or a security officer for General Iron. Ellison alleges that, in response to Frano's screams, he notified Frano that he was standing on public

property. According to Ellison, Frano then "jumped out of the truck and approached [him] aggressively, yelling, swearing, and poking [him] in the chest." Ellison also claims that Frano drew his CPD-issued gun and pointed it at him. Subsequently, Ellison alleges that, for fear that Frano would shoot, he fled on his bike. As he fled, according to Ellison, Frano continued to pursue him in his pick-up truck "at a high speed, against traffic, through stop lights and signs, and onto the sidewalk," leading Ellison to panic that "Frano would hit him or run him over."

Ellison claims that, on the basis of Frano's false allegations to the CPD, police officers arrested and charged Ellison with "trespassing, aggravated assault to a police officer, and felony aggravated battery to a police officer." The state criminally prosecuted Ellison, and Frano testified for the state at the preliminary hearing and at the criminal trial. On October 21, 2015, Ellison was acquitted of all charges.

Ellison alleges that he did not violate city, state, or federal law, and that Frano had no reason to believe that Ellison was in violation thereof. In support of this assertion, Ellison argues that "Frano did not have an arrest warrant, probable cause, reasonable suspicion, consent, or any other lawful basis to stop, detain, or seize" him. Ellison also claims that "Frano provided a false and incomplete version" of the incident to CPD officers who investigated the event to: (i) "justify and hide the use of force, assault and battery against" Ellison; (ii) "cover-up his illegal, tortious, injurious and unprofessional conduct;" and (iii) "fabricate probable cause to arrest" him. Finally, Ellison contends that Frano's actions, including the commencement of a

criminal investigation against him, directly and proximately caused Ellison to suffer damages. Ellison alleges that his damages include his loss of physical liberty, where he was incarcerated in maximum security in Cook County Jail for approximately seven months while he awaited trial, "loss of time, loss of normal life, loss of his beloved pet, and severe emotional distress, and pecuniary damages including attorneys' fees, monies posted for bond, lost wages, and property loss/damage."

The Complaint contains nine Counts. Counts I–VIII specify that they pertain to Frano, and contain the same four prayers for relief, asking this Court to: (i) enter judgment in favor of Ellison; and award Ellison (ii) compensatory and punitive damages; (iii) attorneys' fees and costs; and (iv) additional relief the Court finds just and equitable. In Count IX, Ellison asserts that Frano's purported acts "described in the above paragraphs and claims were committed in the scope of employment," and "[p]ursuant to *respondeat superior*, Defendant General Iron is liable for its agents' actions." It appears, therefore, that Ellison alleges that General Iron is liable for each of Counts I–VIII under a theory of *respondeat superior*.[1] On July 28, 2016, General Iron moved to dismiss the Complaint pursuant to Rule 12(b)(6).

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss "'tests the sufficiency of the complaint, not the merits of the case.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th

---

[1] Consequently, General Iron is not entitled to "a more definite statement as to which of Defendant Frano's acts were allegedly performed 'in the scope of employment' with General Iron," as the answer to this question lies in Count IX: all of them, purportedly. *See* Dkt. 9, p. 6 n.4; Dkt. 9-1 ¶¶ 76–77.

Cir. 2012) (quoting *McReynolds v. Merrill Lynch & Co.*, No. 08 C 6105, 2011 WL 1196859, at *2 (N.D. Ill. Mar. 29, 2011), *aff'd* 694 F.3d 873 (2012)). The allegations in a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must "give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). A plaintiff need not offer "detailed factual allegations," but he or she must provide enough factual support "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The pleadings must permit a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## **DISCUSSION**

First, to the extent that Ellison alleges that General Iron is liable for Count I, an unreasonable seizure claim pursuant to 42 U.S.C. § 1983 under a *respondeat superior* theory, Count I is dismissed against General Iron. As an initial matter, the doctrine of *respondeat superior* is a state law concept, not applicable to Count I. *See, e.g.*, *Vitaich v. City of Chi.*, No. 94 C 692, 1995 WL 493468, at *5 n.7 (N.D. Ill. Aug. 16, 1995). For that reason alone, Count I is dismissed against General Iron. Further, as General Iron argues in a footnote, the Seventh Circuit has held that "just as a

municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)) (emphasis added). In *Iskander*, the Seventh Circuit extended the United States Supreme Court's holding in *Monell*, which rejected municipal liability under a *respondeat superior* theory, to private entities. *See id.* More recently, it has questioned its wisdom in doing so, noting that the "Court has not directly said whether *Monell* applies to private corporations, and there are powerful reasons to say no." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 794 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). Nonetheless, Seventh Circuit case law continues to "extend[ ] *Monell* from municipalities to private corporations." *Id.* at 796; *Hahn v. Walsh*, 762 F.3d 617, 639–40 (7th Cir. 2014), *reh'g and suggestion for reh'g en banc denied* (Sept. 9, 2014), *cert. denied*, 135 S. Ct. 1419 (2015); *Gaston v. Ghosh*, No. 11 C 6612, 2016 WL 2986960, at *2 (N.D. Ill. May 23, 2016) ("I must follow Seventh Circuit precedent, which immunizes private corporations . . . from § 1983 *respondeat superior* liability like the claim asserted here," dismissing Count III of plaintiff's complaint) (Zagel, J.) (emphasis added). Thus, General Iron is insulated from liability for a § 1983 claim under a *respondeat superior* theory unless Ellison alleges that "the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Bruce v. Ghosh*, No. 11-cv-3138, 2015

WL 1727318, at *14 (N.D. Ill. Apr. 13, 2015) (citation omitted). Ellison has not alleged that General Iron engaged in unconstitutional policies that led to a violation of his rights. Ellison, therefore, has failed to state a claim for relief against General Iron with respect to Count I of the Complaint, and Count I is dismissed against General Iron with prejudice.

General Iron presents two arguments in moving to dismiss the Complaint with respect to the remainder of the Counts. First, General Iron asserts that Ellison has not pled facts establishing a causal link between its and Frano's claimed conduct and Ellison's purported damages. Ellison, in response, argues that it has sufficiently alleged causation in the Complaint. The Court agrees with Ellison. "Under Illinois law, proximate cause consists of . . . cause in fact and legal cause." *Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003). "Cause in fact exists when the defendant's conduct 'is a material element and a substantial factor in bringing about the injury.'" *Id.* (quoting *First Springfield Bank & Trust v. Galman,* 720 N.E.2d 1068, 1072 (1999)). Legal cause questions "whether the injury is of a type that a reasonable person would see as a likely result of his or her conduct." *Id.* Proximate causation is typically "a question for the finder of fact to decide; only rarely are the facts so clear that the court can resolve the issue as a matter of law." *Id.*

General Iron argues that it and Frano were not influential in Ellison's arrest, detention, and criminal prosecution, so Ellison cannot establish that Frano's alleged conduct was a proximate cause of Ellison's claimed damages. General Iron, however,

7

fails to recognize that Ellison "need not *prove* anything" at this stage of litigation. *See Fuentes v. Sheahan*, No. 03 C 4892, 2004 WL 1611607, at *4 n.3 (N.D. Ill. July 19, 2004) (emphasis added). The Court's role at this juncture is not to test the merits of the case. *McReynolds*, 694 F.3d at 878. Ellison claims that he did not violate any laws, and that Frano did not have a legal basis to stop him near General Iron's scrap yard. Ellison also asserts that Frano, who is assumed to be the only witness aside from Ellison's friend, made false statements regarding the incident near General Iron's property to police officers. Ellison maintains that, as a result of Frano's statements, police officers arrested and charged him "with trespassing, aggravated assault to a police officer, and felony aggravated battery to a police officer." According to Ellison, these statements led to his seven-month incarceration and criminal prosecution. *See* Dkt. 9-1 at ¶¶ 26–29, 31–38. Frano's alleged statements could reasonably have "played a significant role in causing" Ellison's arrest and prosecution. *See Theriault v. Vill. of Schaumburg*, No. 02 C 7058, 2002 WL 31803826, at *2 (N.D. Ill. Dec. 12, 2002) (citation omitted); *Jones v. City of Chi.*, 856 F.2d 985, 994 (7th Cir. 1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision . . . to proceed to trial . . . will [not] shield a police officer who deliberately supplied misleading information."). General Iron emphasizes that Ellison does not explain how "Frano's alleged reporting of events was 'false,'" and points to Ellison's omissions regarding to whom Frano supposedly reported. Ellison's claims may not *prove* that Frano's actions were the cause in fact

and legal cause of his injuries. He has, however, provided enough factual support to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, General Iron's motion to dismiss the Complaint for failing to allege causation is denied.

General Iron's second argument in support of its motion to dismiss is that Frano's alleged conduct falls outside the scope of his employment with General Iron; Ellison contends it occurred within the scope of his employment. Ellison pleads enough facts to plausibly allege that Frano's conduct occurred within the scope of his employment with General Iron. In determining whether an employee's actions occurred within the scope of his employment, so that an employer may be held liable for its employee's acts under the doctrine of *respondeat superior*, the Court considers three factors. *See Twardy v. Nw. Airlines, Inc.*, No. 00 C 6493, 2001 WL 199567, at *3 (N.D. Ill. Feb. 28, 2001). These include whether the acts: (i) "are of a type the employee is employed to perform;" (ii) "occur substantially within the authorized time and space limits;" and (iii) "are done, at least in part, by an intent to serve the employer." *Id.*

General Iron is correct in asserting that the factors articulated in "*Twardy* must govern here." Yet in analogizing the case, General Iron is missing an important distinction between the facts discussed in *Twardy* regarding the first factor and the facts alleged in the instant matter. *See* Dkt. 9, p. 7. The Court in *Twardy* found that "[c]learly, smacking, dumping water on [plaintiff], and kissing him, are not within the

9

scope of [the flight attendant's] employment with" the airline company. *Twardy*, 2001 WL 199567, at *3. Indeed, it is clear that airlines do not hire flight attendants to smack and kiss passengers. In contrast, protecting General Iron's premises and the adjacent area, maintaining order, and evicting trespassers can reasonably be alleged to be acts of a kind that a security officer is employed to perform. Furthermore, reporting violations or otherwise informing police officers of intruders if one becomes unruly or refuses to vacate, can also be plausibly alleged to fall within Frano's job description.

Ellison makes several assertions in support of the *Twardy* factors. Ellison claims that he stopped riding his bike to pose for a photo with the globe figure near General Iron's scrap yard. Then, Ellison states that Frano approached him in an attempt to get him to leave. Ellison further alleges that when he refused to leave, Frano pulled out and pointed his gun at Ellison. In fear for his safety, Ellison claims, he fled. Ellison asserts that, while fleeing, Frano continued to pursue him in his pick-up truck. He also contends that Frano later reported a false version of events to police officers, which led to Ellison's arrest and subsequent charges and prosecution. Dkt. 9-1, ¶¶ 8–13, 19, 21–28, 37. These claims are enough to plausibly allege that Frano's actions "are of a type" Frano "is employed to perform," maintaining vigil over General Iron's premises, "within the authorized time and space limits," the areas surrounding General Iron's property, and done at least in part, to serve General Iron. *See Twardy*, 2001 WL 199567, at *3.

General Iron's attempts to distinguish other cases, many of which are not binding on the Court, and the majority of which were at the summary judgment stage, not the motion to dismiss stage of litigation, are also not convincing. Ellison has alleged enough facts to provide General Iron with "fair notice of what the . . . claim is" and its grounds. *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 545). Therefore, General Iron's motion to dismiss Counts II–IX of the Complaint, on the basis that Ellison has not pled enough facts to allege that Frano's actions occurred within the scope of his employment with General Iron to state a cognizable *respondeat superior* claim, is denied.

Finally, we have interpreted Ellison's Complaint as bringing all of the Counts, both federal and state, against General Iron. The Court notes the conceptual inconsistency in Ellison's Complaint in asserting that Counts I–VIII are against Frano individually, and then attempting to reincorporate all of them against General Iron in Count IX.

## **CONCLUSION**

For the aforesaid reasons, the Court grants General Iron's motion to dismiss Count I of the Complaint, and denies the motion as to Counts II–IX. It is so ordered.

_____
  Charles P. Kocoras
  United States District Judge

Dated: 10/12/2016